JAMES ZELLERS v. STATE

189 So. 236
Opinion Filed May 19, 1939.

*Joe Brown Booth,* for Plaintiff in Error.

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, and *Thomas H. Anderson,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment of conviction of the offense of larceny of an automobile.

The record shows that on February 1, 1939, the defendant, James Zellers, was arraigned in open court by Albert B. Hubbard, Assistant County Solicitor for Dade County, and pleaded not guilty.

The record shows that on February 1, 1939, the following proceedings were had:

"BE IT REMEMBERED that at a term of the Criminal Court of Record, in and for Dade County, Florida, held at Miami, Florida, on the 1st day of February, A. D. 1939, a cause therein pending wherein THE STATE OF FLORIDA was plaintiff and JAMES ZELLERS was defendant came on to be heard before the Honorable Ben C. Willard, Judge of the Criminal Court of Record in and for Dade County, Florida, and at which time came the said parties by their respective counsel, the defendant having heretofore entered his plea of not guilty, and

THEREUPON, the following proceedings were had:

"APPEARANCES

"For the State of Florida:          For the Defendant:
"A. D. Hubbard, Assistant          Joe Brown Booth.
   County Solicitor.

"MR. HUBBARD: The defendant in his own proper person and by and through his attorney, Joe Brown Booth, waives the right of trial by jury and will submit his case to the Court. Is that correct?

MR. BOOTH: That is correct.

"B. F. BEATTY, called as a witness on behalf of the State, having been first duly sworn, testified as follows:"

Then follows transcript of the testimony.

The plaintiff in error presents two questions for our determination, which are as follows:

1. "Can a defendant who has been properly charged with the commission of a felony enter a plea of not guilty, waive trial by jury, and permit the court to pass upon his guilt or innocence?

2. "Does the court have the authority to try a defendant for a felony without a jury and adjudge his guilt or innocence, when the defendant pleads not guilty and waives his right to trial by jury?"

There is some conflict in decisions throughout the country as to the proper answer to be given to the above stated questions, but we think the questions have been finally and definitely answered by the opinion and judgment in the case of Patton v. United States, 74 Law Ed. 854, 181 U. S. 276, in which Mr. Justice SUTHERLAND, delivering the opinion of the Court said, *inter alia:*

"It may be conceded, at least generally, that under the rule of the common law the accused was not permitted to waive trial by jury, as generally he was not permitted to waive any right which was intended for his protection. Nevertheless, in the colonies such a waiver and trial by the court without a jury was by no means unknown, as the many references contained in the brief of the solicitor general conclusively show. But this phase of the matter we do not stop to consider, for the rule of the common law, whether exclusive or subject to exceptions, was justified by conditions which no longer exist; and as the Supreme Court of Nevada well said in Reno Smelting Mill & Reduction Works v. Stevenson, 20 Nev. 269, 279, 4 L. R. A. 60, 19 Am. St. Rep. 364, 21 Pac. 317:

" 'It is contrary to the spirit of the common law itself

to apply a rule founded on a particular reason to a law when that reason utterly fails—*cessante ratione legis, cessat ipsa lex.'* "

"The maxim seems strikingly apposite to the question here under review. Among other restraints at common law, the accused could not testify in his own behalf; in felonies he was not allowed counsel (4 Sharswood's Bl. Com. 355, note 14), the judge in such cases occupying the place of counsel for the prisoner, charged with the responsibility of seeing that the prisoner did not suffer from lack of other counsel (*ibid*) ; and conviction of crime worked an attaint and forfeiture of official titles of inheritance, which, as Judge Aldrich points out (quotation *supra*), constituted in a large sense the reason for withholding from accused parties the right of waiver.

"These conditions have ceased to exist, and with their disappearance justification for the old rule no longer rests upon a substantial basis. In this respect we fully agree with what was said by the Supreme Court of Wisconsin in Hack v. State, 141 Wis. 346, 351, 352, 45 L. R. A. (N. S.) 664, 124 N. W. 492:

" 'The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent man should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished, if convicted, by the death penalty or some other grievous punishment out of all proportion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist, and well that every technical requirement should be insisted on, when the state demanded its meed of blood. Such a course raised up a sort of a barrier which the court could utilize when a prosecution was successful which ought not to have been suc-

cessful, or when a man without money, without counsel, without ability to summon witnesses and not permitted to tell his own story, had been unjustly convicted, but yet under the ordinary principles of waiver, as applied to civil matters, had waived every defect in the proceedings.

" 'Thanks to the humane policy of the modern criminal law we have changed all these conditions. The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the State and may have his witnesses summoned and paid for by the State; not infrequently he is thus furnished counsel more able than the attorney for the State. In short, the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore, disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon the conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it.'

"The view that power to waive a trial by jury in criminal cases should be denied on grounds of public policy must be rejected as unsound.

"It is not denied that a jury trial may be waived in the case of petty offenses but the contention is that the rule is otherwise in the case of crimes of the magnitude of the one here under consideration. There are decisions to that ef-

fect, and also decisions to the contrary. The conflict is marked and direct. Schick v. United States, 195 U. S. 65, 70, 71, 49 L. Ed. 99, 102, 103, 24 Sup. Ct. Rep. 826, 1 Ann. Cas. 585, is thought to favor the contention. There the prosecution was for a violation of the Oleomargarine Act (August 2 1886) (24 Stat. at Law 209, Chap. 840, U. S. C. Title 26, No. 571) Recompiled Internal Revenue Topics, Sec. 990, punishable by fine only. By agreement in writing a jury was waived and the issue submitted to the Court.

"Judgment was for the United States. This Court held that the offense was a petty one, and sustained the waiver. It was said that the word 'crimes' in Art. 3, Sec. 2, of the Constitution should be read in the light of the common law, and so read, it does not include petty offenses; and that neither the constitutional provisions nor any rule of public poilcy prevented the defendant from waiving a jury trial. The question whether the power of waiver extended to serious offenses was not directly involved, and is not concluded by that decision. Mr. Justice Harlan, in a dissenting opinion, after reviewing the authorities, concluded (p. 83) that 'the grounds upon which the decisions rest are, upon principle, applicable alike in cases of felonies and misdemeanors, although the consequences to the accused may be more evident as well as more serious in the former than in the latter cases.'

"Although we reject the general view of the dissenting opinion that a waiver of jury trial is not valid in any criminal case, we accept the foregoing statement as entirely sound. We are unable to find in the decisions any convincing ground for holding that a waiver is effective in misdemeanor cases but not effective in the case of felonies. In most of the decisions no real attempt is made to establish a distinction, beyond the assertion that public policy

favors the power of waiver in the former but denies it in the latter because of the more serious consequences in the form of punishment which may ensue. But that suggested differentiation, in the light of what has now been said, seems to us more fanciful than real. The Schick case, it is true, dealt with a petty offense, but, in view of the conclusions we have already reached and stated, the observations of the court have become equally pertinent where a felony is involved:

" 'Article 6 of the amendments, as we have seen, gives the accused a right to a trial by jury. But the same article gives him the further right "to be confronted with the witnesses against him * * * and to have the assistance of counsel." Is it possible that an accused cannot admit and be bound by the admission that a witness not present would testify to certain facts? Can it be that if he does not wish the assistance of counsel and waives it, the trial is invalid? It seems only necessary to ask these questions to answer them. When there is not constitutional or statutory mandate and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy?'

"In Com. v. Beard, 48 Pa. Super. Ct. 319, the prosecution was for conspiracy and there, as here, one of the jurors was discharged and the trial concluded with the remaining eleven. Judgment on a verdict of conviction was sustained. The Court, after reviewing the conflicting decisions, was unable to find any good reason for differentiating in the matter of waiver between the two classes of crimes. We fully endorse its concluding words upon that subject (pp 323, 324):

" 'It surely cannot be true that the public is interested in the protection of an accused in proportion to the magnitude of his offending * * * that its solicitude goes out

to the great offender but not to the small * * * that there is a difference in point of sacredness between constitutional rights when asserted by one charged with a grave crime and when asserted by one charged with a lesser one. Hence, when it is held in Schick v. United States, 195 U. S. 65, 49 L. Ed. 99, 24 Sup. Ct. Rep. 826, 1 Ann. Cas. 585, that in trials for the lowest grades of offenses the accused may waive not only the continued presence of the full number of jurors required to make up a jury but the right to trial by jury, the only possible conclusion is that the purely theoretical element of public concern, as potential to override the accused's own free choice and render him effectually unfree even before conviction and sentence, cannot be regarded as in reality much of a factor in any case.'

"This view of the matter subsequently had the approval of the supreme court of the state in Com., *ex rel.*, Ross v. Egan, 281 Pa. 251, 126 Atl. 488. After noting the conflict of authority and that a waiver has been held to be effective in a number of states which are named, it 'is there said (pp 255-257) :

" 'A defendant is supposed to understand his rights and may be aided, if he so desires, by counsel to advise him. There are many legal provisions for his security and benefit which he may dispense with absolutely, as for instance, his right to plead guilty and submit to sentence without any trial whatsoever. * * *

" 'The theory upon which the opposing cases are decided seems to rest on the proposition that society at large is as much interested in an impartial trial of a defendant who may be sentenced to imprisonment, as he himself is, and therefore, no permission to waive any right when charged with a felony, should be accorded to him. There may be reason for applying this rule to capital cases, as has been

done in Pennsylvania, but such a principle ought not to be invoked to relieve those charged with lesser offenses, such as larceny (though technically denomin ted a felony), from the consequences of their own voluntary act, and where it appears by the record that consent to the course pursued was freely given, the defendant should not be heard thereafter to complain. * * *

" 'The solution of the question depends upon the determination whether a trial by less than twelve is an irregularity or a nullity. If the latter be held, no sentence imposed may be sustained, but the contrary is true if the former and correct conclusion be reached. In the case of misdemeanors, the superior court has sustained the sentences where voluntary waiver appeared. Com. v. Beard, *supra*. No real justification for a different decision in the case of felonies, not capital, c in be supported.'

"See also Com. Rowe, 257 Mass. 172, 174-176, 48 A. L. R. 762, 153 N. E. 537; State v. Ross, 47 S. D. 188, 192, 197 N. W. 234, involving a misdeme nor, but followed in State v. Tiedman, 49 S. D. 356, 360, 207 N. W. 153, involving a felony.

"In affirming the power of the defendant in any criminal case to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons, or by the court, we do not mean to hold that the waiver must be put into effect at all events. That, perhaps, sufficiently appears already. Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in crim-

inal cases is of such importance and has such a place in our traditions that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity."

We commend the perusal of the entire opinion rendered in that case, as we have quoted only enough of it here to serve the purpose of disposing of the instant case. We think no useful purpose can be served in now adding to what Mr. Justice SUTHERLAND said in that opinion.

On authority of that opinion and judgment from the highest Court in the land, the judgment here is affirmed.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.