994 So.2d 960 (2008)
Dale JOHNSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC07-368.
Supreme Court of Florida.
September 18, 2008.
Rehearing Denied November 6, 2008.
*961 Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Petitioner.
Bill McCollum, Attorney General, and Celia Terenzio, Bureau Chief, Assistant Attorney General, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, Florida, for Respondent.
LEWIS, J.
We have for review Johnson v. State, 944 So.2d 474 (Fla. 4th DCA 2006), which expressly and directly conflicts with the *962 decisions in State v. Upton, 658 So.2d 86 (Fla.1995), and Tucker v. State, 559 So.2d 218 (Fla.1990). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We approve the ultimate result of the decision under review but disapprove the reasoning to the extent it is inconsistent with this opinion.

FACTUAL AND PROCEDURAL HISTORY
The facts of the underlying action were summarized in the opinion of the Fourth District Court of Appeal as follows:
The State charged Johnson with, inter alia, felony [driving under the influence ("DUI")]. The information alleged that Johnson's faculties were impaired and that he had three prior DUI convictions. The trial court conducted a jury trial on the single, present incident of DUI at issue [this incident occurred on August 4, 2004] without allowing the jury to learn of the alleged prior misdemeanor DUI offenses. After the jury returned a guilty verdict as to the present incident, it was excused and, based on the parties' previous stipulation, the trial court proceeded without a jury to determine whether Johnson had been convicted of DUI on three or more prior occasions.
The trial court ascertained that Johnson had three previous DUI convictions from his Florida Department of Highway Safety and Motor Vehicle Division of Driver's Licenses Transcript of Driver Record ["driving record"]. Based on Johnson's prior convictions and the verdict of the jury, the court adjudicated Johnson guilty of felony DUI.
Johnson, 944 So.2d at 476.
On appeal, the Fourth District held, in part, that Johnson's right to a jury trial was not violated when the trial judge determined that Johnson had three prior DUI convictions. See id. at 475. The Fourth District reasoned that notwithstanding the trial judge's failure to "conduct a colloquy with Johnson concerning waiver," Johnson's counsel stipulated to a second-phase bench trial, which constituted a valid oral waiver of Johnson's right to a jury trial during the second phase of the felony DUI proceeding. Id. at 476-77. This review followed.

ANALYSIS

Applicable Law
In Florida, felony DUI is defined as follows:
3. Any person who is convicted of a fourth or subsequent violation of [the DUI statute], regardless of when any prior conviction for a violation of this section occurred, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. However, the fine imposed for such fourth or subsequent violation may be not less than $1,000.
§ 316.193(2)(b)(3), Fla. Stat. (2004).[1] Additionally, criminal defendants have a right to a jury trial for serious crimesi.e., those that "have a maximum penalty of more than six months' imprisonment or more than a $500 fine"but not petty offensesi.e., those that "have a maximum penalty of six months' or less imprisonment or a $500 or less fine." Reed v. *963 State, 470 So.2d 1382, 1383 (Fla.1985); see also Whirley v. State, 450 So.2d 836, 839 (Fla.1984) ("[T]he federal petty crime exception to the jury trial requirement in criminal prosecutions is also an exception under our own constitutional provision.") (citing Aaron v. State, 345 So.2d 641 (Fla. 1977); Aaron v. State, 284 So.2d 673 (Fla. 1973)). Thus, Johnson was entitled to a jury trial in the instant case because felony DUI is punishable by a fine of "not less than $1,000." § 316.193(2)(b)(3), Fla. Stat. (2004). This is consistent with the current bifurcated trial process that this Court has established for felony DUI. In State v. Rodriguez, 575 So.2d 1262 (Fla.1991), this Court first established the bifurcated process:
We conclude that if a defendant charged with felony DUI elects to be tried by jury, the court shall conduct a jury trial on the elements of the single incident of DUI at issue without allowing the jury to learn of the alleged prior DUI offenses. If the jury returns a guilty verdict as to that single incident of DUI, the trial court shall conduct a separate proceeding without a jury to determine, in accord with general principles of law, whether the defendant had been convicted of DUI on three or more prior occasions.
Id. at 1266 (footnote omitted) (emphasis supplied). However, in State v. Harbaugh, 754 So.2d 691 (Fla.2000), this Court modified the requirements for the second phase of a felony DUI proceeding:
Examining the Rodriguez bifurcated trial process in felony DUI prosecutions in light of Gaudin,[[2]] we hold that in this bifurcated process the jury, not the judge, must determine the verdict from the evidence presented in the second phase.... [T]he jury, unless waived by the defendant, must decide the issue regarding the three prior convictions.
Id. at 694 (citing Gaudin, 515 U.S. at 523-24, 115 S.Ct. 2310 (Rehnquist, C.J., concurring)).
The requirement of a jury trial (absent a valid waiver) during the second phase of a felony DUI proceeding is consistent with the principle that "the requirement of three prior misdemeanor DUI offenses is considered an element of felony DUI," rather than a type of enhancement that results in felony DUI. State v. Finelli, 780 So.2d 31, 33 (Fla.2001) (emphasis supplied) (citing Harbaugh, 754 So.2d 691; Rodriguez, 575 So.2d 1262). This Court has required that either a written waiver, which is signed by the defendant (not merely defense counsel), pursuant to Florida Rule of Criminal Procedure 3.260, see Upton, 658 So.2d at 87, or an oral waiver, which is preceded by a proper colloquy during which the trial judge focuses on the value of a jury trial and provides a full explanation of the consequences of a waiver, see Tucker, 559 So.2d at 220, is necessary to constitute a sufficient waiver. Further, a defendant's silence does not establish a valid waiver of the right to a jury trial. See Upton, 658 So.2d at 88 ("The mere fact that Upton remained silent during the trial and did not object to the judge sitting as the fact-finder was insufficient to demonstrate that he agreed with the waiver.").

Waiver of Appellate Review
As a preliminary matter, the State contends that Johnson waived appellate review of this claim when he failed to request a jury trial or object to the bench trial during the second phase of the felony *964 DUI proceeding. We disagree. In Harbaugh, this Court clearly established that a jury trial during the second phase of a felony DUI proceeding is the default rule. See 754 So.2d at 694. The trial judge must ensure that the defendant has validly waived the right to a jury trial before a bench trial may occur. Further, because a defendant's silence clearly does not constitute a valid waiver, see Upton, 658 So.2d at 88, it logically follows that defendants are not required to break their silence (through either a request for a jury trial or an objection to the bench trial) to preserve appellate review of this claim. Here, just as Johnson's silence was insufficient to waive his right to a jury trial, his silence was insufficient to waive appellate review of this claim. The record establishes that Johnson's silence was only broken once through the following exchange with the trial judge:
THE COURT: ...
[The driving record] indicates you have previously been convicted three times. If that is inaccurate, now is the time for someone to tell me.
THE DEFENDANT: No, sir.[[3]]
Contrary to the State's assertion, this failure by Johnson to challenge his driving record does not constitute a waiver of appellate review on this claim. For all these reasons, we address the merits of the instant case.

Error by the Trial Judge
Johnson asserts that the trial judge erred when he conducted a bench trial during the second phase of the felony DUI proceeding because he (Johnson) did not validly waive his right to a jury trial. We agree. For the same reason that Johnson did not waive appellate review, he did not waive his right to a jury trial during the second phase of the felony DUI proceeding. Johnson's general silence, which was broken only by the limited "No, sir" statement in response to a statement by the court, did not constitute a valid waiver. A proper oral waiver could not occur without a proper colloquy with Johnson. However, this record is devoid of any colloquy. Without a proper colloquy, a defendant's stipulation does not function as a valid waiver of the right to a jury trial; such a waiver must be made knowingly and intelligently. See Guzman v. State, 868 So.2d 498, 511 (Fla.2003) ("A defendant's waiver of a jury trial is valid only if the waiver is knowing, intelligent, and voluntary." (citing Tucker, 559 So.2d at 219)). Here, the missing factors establish that Johnson did not make a knowing and intelligent waiver of his right to a jury trial as required by Florida law during the second phase of the felony DUI proceeding. Therefore, we conclude that the trial judge erred when he conducted a bench trial during the second phase.

Harmless Error Analysis
Finally, the State contends that even if the trial judge erred in this manner, the error was harmless. We *965 agree. As a general rule, this type of error is subject to a harmless-error analysis. See Harbaugh, 754 So.2d at 694 ("[A] Gaudin error is subject to harmless error review.... `[A]nswering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.'") (quoting Neder v. United States, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)); see also Neder, 527 U.S. at 19, 119 S.Ct. 1827 (discussing that in a case where the jury-trial guarantee has been violated, but the "defendant did not, and apparently could not, bring forth facts contesting the omitted element," such a violation is subject to a harmless-error analysis (emphasis supplied)). In State v. DiGuilio, 491 So.2d 1129 (Fla.1986), this Court outlined the harmless-error test that is applicable here:
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

Id. at 1135 (emphasis supplied). Here, the State has proven beyond a reasonable doubt that there is no reasonable probability that the error contributed to Johnson's conviction. Specifically, even if a jury trial had occurred during this second phase of the felony DUI proceeding, Johnson would have still most likely been convicted of felony DUI. The reason is simple. The jury would have likely found the existence of the three previous DUI convictions due to Johnson's driving record. This documentation clearly indicated that he had the requisite three previous convictions for DUI in 1986, 1988, and 1999. Contrary to Johnson's assertion, this driving record was sufficient to establish this element of the felony DUI offense:
(12) If the records of the Department of Highway Safety and Motor Vehicles show that the defendant has been previously convicted of the offense of driving under the influence, that evidence is sufficient by itself to establish that prior conviction for driving under the influence. However, such evidence may be contradicted or rebutted by other evidence. This presumption may be considered along with any other evidence presented in deciding whether the defendant has been previously convicted of the offense of driving under the influence.
§ 316.193(12), Fla. Stat. (2004) (emphasis supplied).[4] Johnson has neither contradicted nor rebutted this evidence. Instead, he has affirmatively stated that the driving record is accurate.[5] Thus, Johnson *966 did not (and seemingly could not) produce any facts to contest the accuracy of the driving record. Accordingly, we conclude that the error in the instant case is not reversible but is, instead, harmless.

CONCLUSION
For the foregoing reasons, we approve the ultimate result of the decision under review but disapprove the reasoning to the extent it is inconsistent with this opinion. In so doing, we approve the decisions in Upton and Tucker.
It is so ordered.
QUINCE, C.J., and WELLS, PARIENTE, BELL, JJ., and CANTERO, Senior Justice, concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
I am troubled by this Court's precedent permitting a harmless-error analysis to be applied to a finding that a defendant was denied his constitutional right to a trial by jury. Upon reflection, I now agree with the dissent of Justice Shaw in State v. Harbaugh, 754 So.2d 691, 695-96 (Fla. 2000), as it relates to the limited application of the harmless-error rule when it has been determined that a defendant has been deprived of his constitutional right to a trial by jury.
Justice Shaw dissented to the majority's finding of harmless error in Harbaugh because he disagreed with the majority's conclusion that the failure of the State to present evidence of Harbaugh's prior DUI convictions to the jury was harmless error under the United States Supreme Court's analysis in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Harbaugh, 754 So.2d at 695-96 (Shaw, J., dissenting). With regard to the harmless-error issue, Justice Shaw argued that the facts of Neder and Harbaugh were distinguishable. Harbaugh, 754 So.2d at 696 (Shaw, J., dissenting). Justice Shaw noted that in Neder, the State actually presented Neder's jury with substantial evidence of the omitted element. Harbaugh, 754 So.2d at 696 (Shaw, J., dissenting). Justice Shaw observed that in Harbaugh's case, however, no evidence of the missing element was presented to the jury. Id. Justice Shaw explained the significance of this distinction:
Thus, it is impossible for an appellate court to say, as it did in Neder, that the omitted element was uncontested and supported by overwhelming evidence such that the jury verdict would have been the same absent the error. See id. The failure to present any evidence of prior DUIs to the jury, therefore, cannot be considered harmless error in this instance.
Harbaugh, 754 So.2d at 696 (Shaw, J., dissenting). Justice Shaw's cogent reasoning also applies here. Further, because of the fundamental nature of the right to jury trial and its obvious importance as the foundation of this country's justice system, we should respect its significance by strictly limiting the application of harmless-error analysis in cases where the right has been denied. To do otherwise is to invite further erosion of the right and ultimately erosion of the integrity of the justice system that is built upon that right.

RIGHT TO A JURY TRIAL AND WAIVER OF RIGHT
Both the United States Constitution and the Florida Constitution guarantee the *967 right to trial by jury. See Blair v. State, 698 So.2d 1210, 1212-13 (Fla.1997). As noted in Blair, the United States Constitution includes three separate provisions addressing that right: Article III,[6] the Sixth Amendment,[7] and the Seventh Amendment.[8] The Florida Constitution also provides that "[t]he right of trial by jury shall be secure to all and remain inviolate." Art. I, § 22, Fla. Const; see also art. I, § 16, Fla. Const. (providing that the accused shall "have a speedy and public trial by impartial jury"). Further, we have acknowledged that "a defendant's right to a jury trial is indisputably one of the most basic rights guaranteed by our constitution." State v. Griffith, 561 So.2d 528, 530 (Fla.1990). A defendant's constitutional right to trial by jury includes "the right to have the jury, rather than the judge, reach the requisite finding of `guilty.'" Sullivan v. Louisiana, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (citing Sparf v. United States, 156 U.S. 51, 105-06, 15 S.Ct. 273, 39 L.Ed. 343 (1895)). Accordingly, a judge may not direct a verdict for the State. Id. (citing Sparf, 156 U.S. at 105-06, 15 S.Ct. 273).
In addition to the constitutional guarantee of the right to a jury trial, the Fifth Amendment to the United States Constitution provides that no one will be deprived of liberty "without due process of law." U.S. Const. amend. V. The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Moreover, the United States Supreme Court has held that the Fifth and Sixth Amendments "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (emphasis added) (citing Sullivan, 508 U.S. at 277-78, 113 S.Ct. 2078).

FELONY DUI
In light of this requirement, we have held that "every element of felony DUI must be proven to the satisfaction of the jury beyond a reasonable doubt." Harbaugh, 754 So.2d at 694. In order to establish the crime of felony DUI, there must be a conviction of misdemeanor DUI on the current charge and proof of an additional element of the existence of three *968 or more prior misdemeanor DUI convictions. Id. (citing § 316.192(2)(b), Fla. Stat.; State v. Woodruff, 676 So.2d 975, 977-78 (Fla.1996)). Because the requirement of three prior misdemeanor DUI offenses is considered an element of felony DUI, a jury must decide that issue, unless a jury's determination is waived by the defendant. Id. (citing Gaudin, 515 U.S. at 523-24, 115 S.Ct. 2310 (Rehnquist, C.J., concurring)).
In the present case, Johnson was charged with felony DUI. Johnson v. State, 944 So.2d 474, 476 (Fla. 4th DCA 2006). The trial court conducted a jury trial on the present incident of DUI. Id. After the jury returned a guilty verdict, the jury was excused, and the trial court proceeded without a jury to determine whether Johnson had been convicted of DUI on three or more prior occasions. Id. The trial court determined that Johnson had three previous DUI convictions and adjudicated him guilty of felony DUI. Id. In sum, the jury did not decide the issue of Johnson's prior convictions.
The absence of a jury determination of this element of felony DUI would have been permissible if Johnson had waived his right to a jury determination of that element. Both the United States Supreme Court and this Court have recognized that a defendant may waive constitutional rights, including the right to trial by jury. See Patton v. United States, 281 U.S. 276, 298, 50 S.Ct. 253, 74 L.Ed. 854 (1930), abrogated on other grounds by Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); Zellers v. State, 138 Fla. 158, 189 So. 236, 237 (1939). Waivers of constitutional rights must be voluntary, knowing, and intelligent. Tucker v. State, 559 So.2d 218, 219 (Fla.1990) (citing Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A defendant may waive his or her right to a jury trial through a written waiver, signed by the defendant, pursuant to Florida Rule of Criminal Procedure 3.260. See State v. Upton, 658 So.2d 86, 87 (Fla.1995). A defendant may also orally waive this right, if the court conducts a colloquy with the defendant to focus the defendant's attention on the value of a jury trial and to explain the consequences of a waiver. See Tucker, 559 So.2d at 220.
However, as the majority properly concludes, Johnson did not validly waive his right to a jury trial. While Johnson's counsel may have stipulated to a bench trial on the prior convictions element of felony DUI, the trial judge failed to conduct the requisite colloquy with Johnson to ascertain his agreement with this stipulation and to ensure that any waiver by Johnson was knowing, intelligent, and voluntary. In the absence of such a colloquy, Johnson could not have provided a valid oral waiver of his right to a jury trial. Therefore, the trial judge erred in conducting a bench trial on the prior convictions element of felony DUI.

STRUCTURAL ERROR AND HARMLESS ERROR
The majority finds that the error in this case is subject to harmless-error analysis and concludes that the error was harmless. For the reasons explained below, I dissent from this portion of the majority's decision.
While most constitutional errors can be harmless, some errors will always invalidate a conviction. Sullivan, 508 U.S. at 279, 113 S.Ct. 2078 (citing Arizona v. Fulminante, 499 U.S. 279, 306-07, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Structural defects in the trial mechanism defy harmless-error analysis because "[t]he entire conduct of the trial from beginning to end is obviously affected." Fulminante, 499 U.S. at 309-10, 111 S.Ct. 1246. Constitutional violations that defy *969 harmless-error analysis affect the framework within which the trial proceeds, rather than merely an error in the trial process itself. Neder, 527 U.S. at 8, 119 S.Ct. 1827 (citing Fulminante, 499 U.S. at 310, 111 S.Ct. 1246). Furthermore, structural errors "necessarily render a trial fundamentally unfair." Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). They "deprive defendants of `basic protections' without which `a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence... and no criminal punishment may be regarded as fundamentally fair.'" Neder, 527 U.S. at 8-9, 119 S.Ct. 1827 (quoting Rose, 478 U.S. at 577-78, 106 S.Ct. 3101). Such errors "are so intrinsically harmful as to require automatic reversal ... without regard to their effect on the outcome." Id. at 7, 119 S.Ct. 1827.
In contrast to structural errors that require automatic reversal, errors subject to harmless-error review require the beneficiary of the error "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under the harmless-error test of Chapman, the State, as beneficiary of the error, must prove "that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (citing Chapman, 386 U.S. at 24, 87 S.Ct. 824). The focus of the harmless-error analysis is on the effect of the error on the trier of fact. Id. at 1139.
Furthermore, both the per se reversible-error rule and the harmless-error rule are concerned with the due process right to a fair trial. Id. at 1135. In acknowledging the shared concern of the two rules and the relationship between the two rules, we have explained:
[A] per se rule is nothing more than a determination that certain types of errors are always harmful, i.e., prejudicial. Per se reversible errors are limited to those errors which are "so basic to a fair trial that their infraction can never be treated as harmless error." Chapman, 386 U.S. at 23, 87 S.Ct. at 827-28. In other words, those errors which are always harmful. The test whether a given type of error can be properly categorized as per se reversible is the harmless error test itself. If application of the test to the type of error involved will always result in a finding that the error is harmful, then it is proper to categorize the error as per se reversible. If application of the test results in a finding that the type of error involved is not always harmful, then it is improper to categorize the error as per se reversible.
DiGuilio, 491 So.2d at 1135.
The denial of the right to trial by jury is one type of error that has been recognized as always harmful. In Sullivan, the United States Supreme Court addressed the denial of a defendant's Sixth Amendment right to a jury trial through a constitutionally deficient reasonable-doubt instruction. 508 U.S. at 276-78, 113 S.Ct. 2078. The Court concluded that the deprivation of the right to a jury verdict of guilt beyond a reasonable doubt was "structural error." Id. at 281-82, 113 S.Ct. 2078. The Court explained that the jury guarantee is a "`basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." Id. at 281, 113 S.Ct. 2078 (quoting Rose, 478 U.S. at 577, 106 S.Ct. 3101). In reaching this holding, the Court also analyzed the question asked under harmless-error review and the appropriateness of such review in the case before it:

*970 Chapman itself suggests the answer. Consistent with the jury-trial guarantee, the question it instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. See Chapman, supra, 386 U.S. at 24, 87 S.Ct. 824 (analyzing effect of error on "verdict obtained"). Harmless-error review looks, we have said, to the basis on which "the jury actually rested its verdict." Yates v. Evatt, 500 U.S. 391, 404, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact renderedno matter how inescapable the findings to support that verdict might bewould violate the jury-trial guarantee. See Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); id., at 593, 106 S.Ct. 3101 (Blackmun., dissenting); Pope v. Illinois, 481 U.S. 497, 509-510, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (Stevens, J., dissenting).
Once the proper role of an appellate court engaged in the Chapman inquiry is understood, the illogic of harmless-error review in the present case becomes evident. Since, for the reasons described above, there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of Chapman review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no object, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubtnot that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. See Yates, supra, 500 U.S. at 413-414, 111 S.Ct. 1884 (Scalia, J., concurring in part and concurring in judgment). The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty. See Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350 (1946).
Sullivan, 508 U.S. at 279-80, 113 S.Ct. 2078.
While a defective reasonable-doubt instruction and the resulting denial of a jury trial is one instance in which the United States Supreme Court has found a structural defect, another situation in which other courts have found a structural defect is where a defendant has been tried without a jury and there has been no proper waiver of the right to a jury trial. At least two Florida courts have explicitly characterized such a denial of the right to trial by jury as structural error. See Gyulveszi v. State, 805 So.2d 84, 85 (Fla. 2d DCA 2002) (concluding that the absence of a jury-trial waiver by the defendant in writing or on the record was structural error requiring reversal); Abrams v. State, 777 So.2d 1205, 1206 (Fla. 4th DCA 2001) (describing the denial of a jury trial as a structural defect requiring automatic reversal).
Similarly, every Florida district court of appeal has issued a decision reversing a conviction obtained without a valid waiver *971 of a jury trial. See, e.g., Montero v. State, 780 So.2d 917, 917 (Fla. 2d DCA 2000) (reversing the defendant's conviction because the record failed to show that the defendant validly waived his right to a jury trial); Hyler v. State, 732 So.2d 1208, 1209 (Fla. 4th DCA 1999) (concluding that a conviction must be reversed where the record contained no written waiver and did not reflect an inquiry by the trial court that the defendant voluntarily, knowingly, and intelligently waived his right to a jury trial); Gamble v. State, 696 So.2d 420, 420 (Fla. 5th DCA 1997) (holding that the failure to inform the defendant of his right to a six-person jury and the failure to consult the defendant as to his wishes was an error for which a new trial was the only remedy); Sansom v. State, 642 So.2d 631, 631 (Fla. 1st DCA 1994) (finding that a new trial was necessitated by the absence of a proper waiver); Bassue v. State, 536 So.2d 1140, 1141 (Fla. 3d DCA 1988) (reversing a conviction and sentence where there was no was inquiry made of the defendant's waiver and the waiver was not an intelligent one).
This Court has also approved of the reversal of a conviction obtained without a valid waiver of the right to a jury trial. See Upton, 658 So.2d at 87-88 (approving of a district court decision that reversed a defendant's conviction and sentence where the defendant's attorney, alone, waived a jury trial); Tucker, 559 So.2d at 220 ("District courts have properly reversed convictions when the record contained no written waiver of a jury trial and the trial court failed to inquire into the defendant's waiver of a jury trial or conducted an insufficient inquiry." (citing Shuler v. State, 463 So.2d 464 (Fla. 2d DCA 1985); Tosta v. State, 352 So.2d 526 (Fla. 4th DCA 1977))).
Courts in other jurisdictions have also described the denial of the right to a jury trial as structural error. See, e.g., Miller v. Dormire, 310 F.3d 600, 604 (8th Cir. 2002) (finding that the defendant's attorney's waiver of a jury trial was structural error requiring automatic reversal of the defendant's conviction); State v. Baker, 217 Ariz. 118, 170 P.3d 727, 731 (Ct.App. 2007) (holding that where the record showed neither that the trial court explained to the defendant his right to a jury trial nor an effective waiver of the right, structural error occurred); People v. Collins, 26 Cal.4th 297, 109 Cal.Rptr.2d 836, 27 P.3d 726, 736 (2001) (finding that the trial court's improper inducement of a jury-trial waiver amounted to a structural defect); cf., e.g., Spytma v. Howes, 313 F.3d 363, 372 (6th Cir.2002) (suggesting that a jury waiver issue was "arguably not subject to harmless error analysis"); United States v. Duarte-Higareda, 113 F.3d 1000, 1003 (9th Cir.1997) ("[W]e conclude that this error warrants reversal because the district court's failure to ensure the adequacy of [the defendant's] jury waiver affected the basic framework of [the defendant's] trial and we cannot determine whether this effect was harmless."); Edwards v. Sasser, 462 F.Supp. 374, 378 (E.D.Va.1979) ("Denial of the right to trial by jury cannot be deemed harmless error."); Balbosa v. State, 275 Ga. 574, 571 S.E.2d 368, 369 (2002) ("We are of the opinion that a harmless error analysis cannot be applied to a jury trial waiver."); State v. Simpson, 29 Kan.App.2d 862, 32 P.3d 1226, 1233 (2001) (declining to say that the failure to advise a defendant of the right to a twelve-person jury was harmless); State v. Hauk, 257 Wis.2d 579, 652 N.W.2d 393, 404 n. 9 (Ct.App.2002) (refusing to engage in harmless-error analysis where there was no valid jury waiver). But see, e.g., State v. Hinton, 702 N.W.2d 278, 282 (Minn.Ct.App.2005) (applying a harmless-error analysis to the admission of the defendant's prior convictions without the defendant's personal waiver of his right to a jury determination of the prior *972 convictions); State v. Kranz, 353 N.W.2d 748, 753 (N.D.1984) (conducting a harmless-error analysis of the trial court's failure to obtain an express jury-trial waiver from the defendant).
In Neder, the United States Supreme Court narrowly held that the harmless-error test of Chapman may be applied to a jury instruction that omitted an element of the offense. Neder, 527 U.S. at 4, 119 S.Ct. 1827. Specifically, the Court held that the harmless-error rule applied to the trial court's erroneous refusal to submit the issue of materiality, as an element of the charge of tax fraud, to the jury. Id.[9] The Court reasoned that "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. at 9, 119 S.Ct. 1827.[10] The Court also explained that its conclusion was "consistent with the holding (if not the entire reasoning) of Sullivan v. Louisiana." Neder, 527 U.S. at 10, 119 S.Ct. 1827. The Court observed that unlike the error in Sullivan, the error in the case before it did not "vitiat[e] all the jury's findings." Neder, 527 U.S. at 11, 119 S.Ct. 1827 (quoting Sullivan, 508 U.S. at 281, 113 S.Ct. 2078).
Justice Scalia, joined by Justices Souter and Ginsburg, dissented from the harmless-error portion of the Court's decision in Neder because he "believe[d] that depriving a criminal defendant of the right to have the jury determine his guilt of the crime chargedwhich necessarily means his commission of every element of the crime chargedcan never be harmless." Neder, 527 U.S. at 30, 119 S.Ct. 1827 (Scalia, J., concurring in part and dissenting in part). Justice Scalia explained, "Harmless-error review applies only when the jury actually renders a verdictthat is, when it has found the defendant guilty of all the elements of the crime." Id. at 38, 119 S.Ct. 1827.
I acknowledge that this Court has subsequently relied on Neder to decide whether a "Gaudin error" was subject to harmless-error review. See Harbaugh, 754 So.2d at 694. In Harbaugh, this Court addressed whether the bifurcated procedure of State v. Rodriguez, 575 So.2d 1262 (Fla.1991),[11] should be amended in light of Gaudin. Harbaugh, 754 So.2d at 692. This Court found that it should be amended: "Examining the Rodriguez bifurcated trial process in felony DUI prosecutions in light of Gaudin, we hold that in this bifurcated process the jury, not the judge, must determine the verdict from the evidence presented in the second phase." Harbaugh, 754 So.2d at 694. In addition to this holding, this Court concluded that, in accord with Neder, "a Gaudin error is subject to harmless error review." Harbaugh, 754 So.2d at 694.
*973 Although this Court decided in Harbaugh that harmless-error analysis should apply to the denial of a jury trial on one of the elements of felony DUI, I now believe that we erred in so holding. That decision has started us down a slippery slope that unnecessarily undermines one of our most valued rights. Who knows where this may lead. As noted above, I would adopt the well-reasoned view of Justice Shaw in Harbaugh, which distinguishes the circumstances of Neder from those in Harbaugh and this case. By adopting Justice Shaw's view we may not be fully honoring the fundamental right to trial by jury as contemplated by Justice Scalia, but we will at least be limiting the damage done to its invocation in Neder.
NOTES
[1] It should be noted that Johnson has referred to section 316.193, Florida Statutes (2003), in his brief, which is not the applicable version of the felony DUI statute for purposes of this review. Johnson committed the alleged offense on August 4, 2004. Thus, the version of section 316.193 that is applicable here was effective from July 1, 2004, to September 30, 2005. See ch. 2004-379, § 1 at 2886, Laws of Fla.
[2] In United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the High Court held that the trial court erred when it did not allow the jury to decide materiality, which was an element of the charged offense (i.e., whether the defendant made material false statements). See id. at 507, 115 S.Ct. 2310.
[3] It should be noted that contrary to the State's assertion, this is the only instance in the record where Johnson addressed the accuracy of his driving record. The State asserts that Johnson made a similar affirmation before trial, but instead, it was Johnson's counsel who stated before trial that the driving record was "reflected sufficiently." This statement by defense counsel was made in the following context:

[STATE]: ... The State will be introducing the driver's license record.
I have redacted it. If Your Honor wants to look at it, I believe there is no objection by Defense.
[DEFENSE COUNSEL]: It is reflected sufficiently.
(Emphasis supplied.)
[4] As previously discussed, Johnson has relied on an inapplicable version of the felony DUI statute. This is a crucial point because the inapplicable version does not contain subsection (12), which is quoted above. Consistent with this omission, Johnson argues that his driving record by itself is insufficient to establish the three previous DUI convictions. Subsection (12), which states the exact opposite, was added to the 2004 version of this statute, and its language is critical to our conclusion that the error here was harmless.
[5] Johnson asserts that we should not consider this statement in conducting a harmless-error analysis due to the following: (1) if the second phase of this felony DUI proceeding had been a jury trial, he would have never been questioned by either the trial judge or the State; and (2) this questioning violated his right to remain silent. We conclude that this assertion is without merit for multiple reasons. First, Johnson provides no authority to support his proposition that we may not consider all evidence within the record when we conduct a harmless-error analysis. Second, we consider Johnson's statement only to conclude that he likely would not have been able to present any facts to contest the accuracy of the driving record had a jury trial occurred during the second phase of this felony DUI proceeding. Thus, it is irrelevant that this alleged questioning of Johnson would not have occurred during a jury trial or that it possibly violated his right to remain silent. Johnson's statement provides valuable insight on that which likely would have occurred if a jury had been empanelled for this second phase.
[6] "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3.
[7] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to trial by jury applies to the states through the Fourteenth Amendment. See Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
[8] "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Seventh Amendment has not been made applicable to the states through the Fourteenth Amendment. See Walker v. Sauvinet, 92 U.S. 90, 92-93, 23 L.Ed. 678 (1875).
[9] As previously recognized by the Court in Gaudin, such refusal was erroneous because it infringed on a defendant's constitutional right to have a jury determine, beyond a reasonable doubt, his or her guilt of every element of the crime charged. 515 U.S. at 522-23, 115 S.Ct. 2310.
[10] After determining that the error was subject to the harmless-error analysis, the Court found that the error was harmless. Neder, 527 U.S. at 20, 119 S.Ct. 1827.
[11] In Rodriguez, this Court established a bifurcated process for trying felony DUI:

We conclude that if a defendant charged with felony DUI elects to be tried by jury, the court shall conduct a jury trial on the elements of the single incident of DUI at issue without allowing the jury to learn of the alleged prior DUI offenses. If the jury returns a guilty verdict as to that single incident of DUI, the trial court shall conduct a separate proceeding without a jury to determine, in accord with general principles of law, whether the defendant had been convicted of DUI on three or more prior occasions.
575 So.2d at 1266 (footnote omitted).