PER CURIAM.
Convicted of first-degree murder and robbery, Joe Louis Smith appeals the trial court’s order summarily denying his motion for post-conviction relief pursuant to Rule 3.850, Florida Rule of Criminal Procedure. He alleges three instances of ineffective assistance of trial counsel, only one of which merits discussion.
Smith complains that his trial counsel was ineffective for failure to object to a six-person jury in a capital murder case, claiming that neither he nor his trial counsel agreed to waive the right to a twelve-person jury. He alleges that while the State at a pretrial conference informed the trial court that it would not be seeking the .death penalty, there was “no indication” of any agreement between the State and the defense to try his case with a six-person jury. The State in its response to this *269 court acknowledges that the record “does not reflect an on-the-record waiver by defense counsel,”[1] but argues that Smith has failed to demonstrate prejudice because his claim that a twelve-person jury would have been more susceptible to reasonable doubt than a six-person jury is “purely speculative” and more is required by the standards established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), which originated in the Florida state courts, the United States Supreme Court rejected the argument that a criminal defendant was entitled to a twelve-person jury in a robbery prosecution and explained in some detail why a twelve-person jury is not necessarily more advantageous to a criminal defendant than a six-person jury. The Supreme Court’s reasoning supports the trial court’s denial of Smith’s Rule 3.850 motion in the instant case:
[T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group’s determination of guilt or innocence. The performance of this role is not a function of the particular number of the body that makes up the jury. To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representatives cross-section of the community. But we find little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12— particularly if the requirement of unanimity is retained. And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size. It might be suggested that the 12-man jury gives a defendant a greater advantage since he has more ‘chances’ of finding a juror who will insist on acquittal and thus prevent conviction. But the advantage might just as easily belong to the State, which also needs only one juror out of twelve insisting on guilt to prevent acquittal. What few experiments have occurred — usually in the civil area — indicate that there is no discernible difference between the results reached by the two different-sized juries. In short, neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members.
Similarly, while in theory the number of viewpoints represented on a randomly selected jury ought to increase as the size of the jury increases, in practice the difference between the 12-man and the six-man jury in terms of the cross-section of the community represented seems likely to be negligible. Even the 12-man jury cannot insure representation of every distinct voice in the community, particularly given the use of the peremptory challenge. As long as arbitrary exclusions of a particular class from the jury rolls are forbidden, ... the concern that the cross-section will be significantly diminished if the jury is decreased in size from 12 to six seems an unrealistic one.
We conclude, in short, as we began: the fact that the jury at common law was *270 composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance ‘except to mystics.’ To read the Sixth Amendment as forever codifying a feature so incidental to the real purpose of the Amendment is to ascribe a blind formalism to the Framers which would require considerably more evidence than we have been able to discover in the history and language of the Constitution or in the reasoning of our past decisions. We do not mean to intimate that legislatures can never have good reasons for concluding that the 12-man jury is preferable to the smaller jury, or that such conclusions — reflected in the provisions of most States and in our federal system — are in any sense unwise. Legislatures may well have their own views about the relative value of the larger and smaller juries, and may conclude that, wholly apart from the jury’s primary function, it is desirable to spread the collective responsibility for the determination of guilt among the larger group. In capital cases, for example, it appears that no State provides for less than 12 jurors — -a fact that suggests implicit recognition of the value of the larger body as a means of legitimating society’s decision to impose the death penalty. Our holding does no more than leave these considerations to Congress and the States, unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number that can constitute a jury.
399 U.S. at 100-102, 90 S.Ct. 1893 (footnotes and citations omitted). In summary, the Supreme Court in Williams, while recognizing the prerogative of legislatures to provide for twelve-person juries when the death penalty is sought, nonetheless takes the position that there is no evidence that a twelve-person jury is necessarily more advantageous than a six-person jury to a criminal defendant. Assuming ar-guendo in the instant case that there was in fact no agreement between the State and defense counsel, and that defense counsel simply failed to object to a six-person jury, in light of Williams, Smith has failed to demonstrate the requisite prejudice required by Strickland. The burden placed on Smith by Strickland is to show that there is a reasonable probability that, but for his attorney’s alleged unprofessional errors, the result of the trial with six jurors rather than twelve would have been different. A reasonable probability is a possibility sufficient to undermine confidence in the outcome.
We note that Florida law recognizes a distinction between a criminal defendant’s right to a jury trial with six jurors and a criminal defendant’s right to a twelve-person jury in a capital case. On the one hand, a criminal defendant’s right to a jury trial consisting of “not fewer than six” jurors is guaranteed by Article I, section 22 of the Florida Constitution. A criminal defendant’s right to a twelve-person jury in a capital case is not guaranteed by the Florida Constitution but is provided for by rule and statute. Article I, section 22 states that the number of “jurors, not fewer than six, shall be fixed by law.” The legislature has enacted section 913.10, Florida Statutes to provide that, “Twelve persons shall constitute a jury to try all capital cases.... ” This language is repeated in Rule 3.270 of the Florida Rules of Criminal Procedure. The significance of the form of enactment is that a criminal defendant’s constitutional right to a jury trial with six jurors is fundamental in nature, and a criminal defendant’s statutory right to a twelve-person jury in a capital case is not fundamental. Therefore, a defendant’s personal waiver of this right is not required, as explained in State v. Griffith, 561 So.2d 528, 530 (Fla.1990):
*271 The decision to proceed to trial with a jury of six persons, in lieu of twelve, in exchange for the state’s agreement to waive the death penalty, must be considered a tactical decision.... This tactical decision should be equated with other instances wherein this Court has held a defendant’s personal on-the-record waiver unnecessary for a waiver to be effective.
(footnote and citations omitted).[2]
The trial court’s summary denial of Smith’s motion for post-conviction relief is affirmed.
AFFIRMED.
SAWAYA, C.J., PETERSON and GRIFFIN, JJ., concur.

. Of course, it may well be that there was an agreement that took place either off-the-record or at a hearing that was not transcribed.

. In a companion opinion released on the same date as Griffith, the supreme court in State v. Joseph, 561 So.2d 534 (Fla.1990), also held that while a twelve-person jury could be waived by the defendant or his counsel, the waiver must appear on the record. However, Joseph was a direct appeal, not a post-conviction proceeding, and unlike the instant case, the defendant in Joseph was not required to prove the required prejudice established by the Supreme Court in Strickland.