NORTHCUTT, Judge.
 

 Of a trial court’s many difficult duties, few are so delicate as instructing a deadlocked jury. Such instructions are potentially coercive, and the giving of them requires extreme sensitivity to the potential for impinging on a criminal defendant’s fundamental right to a trial by jury. In this case, Daniel Monforto contends that his convictions for robbery and burglary were tainted by fundamental error in the trial court’s instructions to a deadlocked jury. We agree and reverse.
 

 After both parties rested in Monforto’s one-day trial, the trial court and the attorneys discussed the timing of the closing arguments, instructions, and jury deliberations. If they continued that day, the jurors would not begin deliberating until approximately 5:00 p.m. If the jurors did not want to stay past 5:00 to deliberate, the attorneys preferred to wait until they returned the following day before giving the closing arguments. The court explained the timing to the jurors, and the jurors decided to stay. As expected, they began their deliberations around 5:00.
 

 After only about one hour, the foreman sent out a note that said: “Your Honor, currently we have not reached a unanimous decision.” Defense counsel expressed his belief that the jurors wished to leave for the evening, but the court wanted clarification. The jurors were returned to the courtroom, and the court recounted the possible interpretations of the note: “It means that you haven’t yet [reached a unanimous decision], but you can; you haven’t yet and you can, but you can’t do it tonight; you haven’t yet and you probably can’t reach a unanimous decision.” The court asked for clarification and sent the jurors back to the jury room.
 

 In short order, the foreman sent out a note reporting that the jury was split five-to-one in favor of convicting on both counts. The note also said that “[i]t is unlikely that at any time the jury will find a unanimous decision.” When the jurors were returned to the courtroom, the court instructed them on conducting them deliberations, and it discussed the nature of their problem with the foreman.
 

 The court’s remarks to the jury resembled an instruction known as an
 
 Allen
 
 charge, so dubbed for the U.S. Supreme Court case approving it.
 
 See Allen v. United States,
 
 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). This instruction sometimes is referred to as a “dynamite charge,” and the Florida Supreme Court approved its use in
 
 State v. Bryan,
 
 290 So.2d 482 (Fla.1974).
 
 Lewis v. State,
 
 369 So.2d 667, 668 (Fla. 2d DCA 1979). The instruction for jury deadlock appears as Florida Standard Jury Instruction (Criminal) 4.1.
 
 [1]
 
 Deviations from the approved
 
 *67
 
 instruction are not recommended, as “Florida courts have demonstrated extreme sensitivity to the potential coercive effect of such jury charges.”
 
 Palmer v. State,
 
 681 So.2d 767, 767 (Fla. 5th DCA 1996).
 

 In this case, when the jurors returned to the courtroom after announcing their numerical split, the judge told them that he knew they had worked hard to reach a verdict but apparently it had not been possible for them to do so. This language essentially tracked the opening of Florida’s standard instruction. The court then said: “Sometimes an early vote before discussion can make it hard to reach, a decision.
 
 The discussion might make it hard to see all sides of the case.”
 
 (Emphasis supplied.) In contrast, the standard instruction states that the “vote, not the discussion, might make it hard to see all sides of the case.” Fla. Std. Jury Instr. (Crim.) 4.1. This was no doubt an inadvertent slip because the court then returned to the theme of the standard instruction, stating that “it appears the vote has been taken at a time when further discussion] might be helpful.”
 

 The court then recited one of the key principles of the standard instruction: “We’re all aware that it’s legally permissible for a jury to disagree. There are two things a jury can lawfully do in a case; one is to agree on a verdict, and the other is to disagree on what the facts of the case may truly be.” Consistent with the standard instruction, the court told the jury that “[t]here’s nothing to disagree about on the law in this case. The law is as I told you. If you have any disagreements about the law, then I need to clear them up right now.”
 

 At this point, the standard instruction states: “If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.” Fla. Std. Jury Instr. (Crim.) 4.1. Here, the court instead asked the foreman whether the jury’s issue was legal or factual. In reply, the foreman stated that he believed it was a legal question. The foreman agreed to submit the question in writing for the court to resolve.
 

 The court then told the jury that “[i]f it’s a factual question, like I told you, that’s the jury’s decision. You decide what the facts are. I decide what the law is. And if you’re unclear on what the law is, then you need to ask a question about the law.” The foreman said the jury did not mind returning to the jury room to prepare a written question.
 

 The court then finished by telling the jury:
 

 That’s what I’m going to ask you to do. I want you to go back in and I would like you to conduct further discussions and ask each other about the weaknesses and think about the weaknesses of your own individual positions in the case, if there are any, that you feel should be communicated.
 

 You should not interpret [sic] each other — or comment on each other’s views until each of you has had a chance to talk about what your position is.
 

 After you’ve done that and you simply cannot reach a verdict, if it is a factual question, then come back in and let me know that. But if it’s a legal question, I
 
 *68
 
 want you to phrase that legal question to me and then have the bailiff bring it back in writing and I’ll respond to it.
 

 In contrast, a court reading the standard instruction is to direct the jury to return to its deliberations but with the caveat that “[b]y law, I cannot demand this of you.” Fla. Std. Jury Instr. (Crim.) 4.1. Then: “After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mis-tried, and will discharge you with my sincere appreciation for your services.”
 
 Id.
 
 In this case, contrary to the standard instruction, the court omitted the portions advising the jurors that it could not demand their continued deliberations and that it would discharge them with appreciation for their services if continued deliberations did not result in a verdict and the case was mistried.
 

 Rather than return to the courtroom with a legal question, ten minutes later the jury returned with guilty verdicts on both counts.
 

 A trial court should not say or do anything “that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position.”
 
 Thomas v. State,
 
 748 So.2d 970, 976 (Fla.1999). On appeal, we must decide “whether, under the totality of the circumstances, the trial judge’s actions were coercive.”
 
 Id.
 
 Here, there are several facts that compel our decision to reverse.
 

 First, the court’s remarks may have led the jurors to think they would not go home until they reached a verdict. When the court returned the jurors to their deliberations, it advised them that if they simply could not reach a verdict because of a factual question, “then come back in and let me know that.” The court failed to tell them that if they simply could not agree, their work would end with a mistrial and the court’s sincere appreciation for their services, which is how the standard instruction is written. “In giving an
 
 Allen
 
 charge, a trial court must avoid: ‘(1) coercive deadlines, (2) threats of marathon deliberations, (3) pressure for the surrender of conscientiously held minority views, and (4) any implication of a false duty to decide.’ ”
 
 Young v. State,
 
 711 So.2d 1379, 1379 (Fla. 2d DCA 1998) (quoting in part
 
 Gahley v. State,
 
 567 So.2d 456, 459 (Fla. 1st DCA 1990)). We find the court’s instruction problematic when considered in the context of this case, where the jurors had voted to stay after 5 p.m. and finish their work instead of returning the next day and then reached a deadlock after only one hour’s deliberations. When told to resume deliberations with no end in sight, the jury reached a verdict in ten minutes. In this case, the deviation from the standard instruction raised the specter of marathon deliberations and potentially pressured the dissenting juror to give in to the others so that the jury could go home.
 

 Second, the court engaged in a discussion with the foreman about the nature of their deliberations. While the foreman characterized the jury’s dilemma as a legal question, we cannot know if he was correct because the jury never submitted its question. The jury may have been hung up on a factual question or a mixed question of law and fact, but the court appeared to accept the foreman’s characterization of their deadlock as relating to a legal question, which he promised to resolve. “The fear is that members of a deadlocked jury will improperly interpret the judge’s words and actions as support for some position on the merits of the case. There is also great concern that some jurors will place undue significance on events during an
 
 Allen
 
 charge.... ”
 
 McKinney v. State,
 
 640 So.2d 1183, 1187 (Fla. 2d DCA 1994). Given the jury’s failure to send out a written
 
 *69
 
 question and the fact that they instead quickly reached a verdict when twice before they had announced an impasse, we conclude that the deviations from the standard instruction require a reversal.
 

 Third, although offered without solicitation, the foreman announced the jury’s numerical split of five-to-one. This alone would not be grounds for reversal. In
 
 McElrath v. State,
 
 516 So.2d 276 (Fla. 2d DCA 1987), the jurors revealed their five-to-one split, but this court affirmed because the trial court more closely adhered to the standard instruction and the jury deliberated for an additional fifty-five minutes before rendering its verdict.
 
 See also Scoggins v. State,
 
 726 So.2d 762 (Fla.1999) (concluding that judge’s inquiry into jury’s numerical division was not fundamental error where defense counsel agreed, judge’s inquiry related more to jury’s schedule for deliberations than the nature of their deliberations, and judge did not give supplemental instructions). Here, however, the court strayed from the standard instruction and the jury deliberated only ten more minutes before announcing guilty verdicts.
 

 “Because the right of an accused to a trial by jury is one of the most fundamental rights guaranteed by our system of government, and is the cornerstone of a fair and impartial trial, an infringement of that right constitutes a fundamental error.”
 
 Rodriguez v. State,
 
 462 So.2d 1175, 1177 (Fla. 3d DCA 1985) (concluding that improper charge to deadlocked jury was fundamental error) (internal citations and alterations omitted). “A defendant has the right to have a hung jury, and nothing should be said by the trial court to the jury that would or could likely influence the decision of a single juror to abandon his conscientious belief as to the correctness of his position.”
 
 Lewis,
 
 369 So.2d at 669 (internal citations, quotation marks, and alterations omitted). We conclude that the deviations from the standard instruction constituted fundamental error in this case. Therefore, we reverse and remand for a new trial.
 

 Reversed and remanded.
 

 FULMER and KHOUZAM, JJ., Concur.
 

 [1]
 

 . 4.1 JURY DEADLOCK
 

 I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.
 

 We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do: agree on a verdict or disagree on what the facts of the case may truly be.
 

 There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them for you now. That should be my problem, not yours.
 

 If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.
 

 I have only one request of you. By law, I cannot demand this of you, but I want you to
 
 *67
 
 go back into the jury room. Then, taking turns, tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services.
 

 You may now retire to continue with your deliberations.