DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRANDON J. BARTELS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0728

[May 7, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Daliah H. Weiss, Judge; L.T. Case No. 502022CF010450A.

Daniel Eisinger, Public Defender, and Mara C. Herbert, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Rachael Kaiman, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

For offenses occurring between 2007 and 2019, Appellant Brandon Bartels was charged with six counts of sexual battery on a person less than twelve years of age (Counts 1-6); five counts of sexual battery with a child over age 12 and under age 18 by a person in familial or custodial authority (Counts 7-11); and four counts of lewd or lascivious molestation (Counts 12-15). The victim was Appellant's daughter—she testified that the sexual offenses started when she was five years old. A six-person jury was empaneled to hear this case. Appellant did not object or otherwise request a twelve-person jury. Ultimately, Appellant was found guilty on Counts 1-14 and sentenced to life in prison without the possibility of parole.

On appeal, Appellant's "Point I" argues that he is entitled to a new trial because "[f]undamental error resulted from charging and convicting Appellant under the 2022 version of section 794.011 because the term 'female genitals' substantively altered the meaning of 'sexual battery' by expanding the factual grounds upon which sexual battery can be committed[,] thus violating ex post facto prohibitions as to Appellant,

whose sexual battery crime was allegedly committed prior to the legislative amendments to section 794.011(1), Florida Statutes." In Point I, Appellant only challenges the convictions resulting from five of the fifteen charges.

"To constitute fundamental error, 'the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Polls v. State*, 134 So. 3d 1068, 1070 (Fla. 4th DCA 2013) (quoting *State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991)). We need not address the "wrong version of the statute" argument because the victim's testimony and other evidence was sufficient to convict Appellant under the "sexual battery" definitions in both the 2014 and 2022 versions of section 794.011, Florida Statutes. Thus, no fundamental error occurred because the convictions could have been obtained without the assistance of the alleged error.

Appellant's Point II argues he was entitled to a twelve-person jury because he was charged with multiple capital offenses as defined by Florida law, and thus his Sixth and Fourteenth Amendment rights were violated because a jury of only six persons found him guilty. As noted above, Appellant did not preserve this argument, as he did not request a twelve-person jury. *See Albritton v. State*, 360 So. 3d 1145, 1146–47 (Fla. 4th DCA 2023) (holding the defendant's claim he was "entitled to a twelve-person jury under the Sixth and Fourteenth Amendments to the United States Constitution" was not preserved). *Albritton* cited *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005), for the rule that "proper preservation requires a litigant to make a timely, contemporaneous objection to place the trial court on notice that error may have been committed and provide the trial court with an opportunity to correct the error at an early stage of the proceedings." *Albritton*, 360 So. 3d at 1147.

Further, Appellant does not argue that seating a six-person jury to consider charges of sexual battery of a child under age twelve constitutes "fundamental error." *See id.* at 1146 ("[Because] the defendant's appeal does not argue that the officers' alleged failure to follow the 'knock-and-announce' rule would constitute fundamental error . . . we cannot review this argument for fundamental error.").

The State's answer brief states "Appellant did not object to the six-member jury below, and this Court has previously found the issue was not preserved when it was not raised in the lower court." The State's answer brief also cites to *Albritton*. Although *Albritton* dealt with a United States Constitution jury-size challenge, our opinion cites to *Harrell* for the *general proposition* that "proper preservation requires a litigant to make a timely, contemporaneous objection to place the trial court on notice that error

2

may have been committed and provide the trial court with an opportunity to correct the error at an early stage of the proceedings. *Albritton*, 360 So. 3d at 1147. Clearly, "the preservation issue" was raised in the State's answer brief.

On the merits, we find no fundamental error in trying this case before a six-person jury. Alternatively, any error was harmless. On this issue, Appellant raises two arguments.

First, he asserts that "[u]nder the Sixth and Fourteenth Amendments a defendant is entitled to a twelve-person jury in a trial for a felony offense." This argument has regularly been rejected by Florida and federal appellate courts. *See, e.g., Guzman v. State*, 350 So. 3d 72, 73 (Fla. 4th DCA 2022), *review denied*, No. SC2022-1597, 2023 WL 3830251 (Fla. June 6, 2023), and *cert. denied*, 144 S. Ct. 2595 (2024); *Simpson v. State*, 368 So. 3d 513 (Fla. 5th DCA 2023).

Second, Appellant argues that Florida law guarantees the right to a twelve-person jury for all capital offenses. He notes that section 913.10, Florida Statutes (2024), provides that "[t]welve persons shall constitute a jury to try all capital cases," and Florida Rule of Criminal Procedure 3.270 similarly declares "[t]welve persons shall constitute a jury to try all capital cases . . . ." Section 794.011(2)(a), Florida Statutes (2023), provides that sexual battery by a person 18 or older on a person under 12 is a "capital felony."

The Florida supreme court addressed this argument in 1984, when it opined that, because the Eighth Amendment prohibits a death sentence for capital sexual battery, the crime is not a capital offense necessitating a twelve-person jury. *State v. Hogan*, 451 So. 2d 844, 845–46 (Fla. 1984). However, following the 2023 amendment of section 794.011(2)(a), Florida Statutes, the death penalty for capital sexual battery is now authorized for those offenses committed after October 1, 2023. Ch. 2023-25, § 1, Laws of Fla.

We agree with Appellant and the special concurring opinion that *Hogan* should be revisited, particularly in light of the 2023 statutory amendment. However, this is not the appropriate case to certify an issue of great public importance because (1) the Florida statute jury-size argument was neither preserved below nor argued on appeal as fundamental error; (2) the 2023 amendment does not apply to this case because the crimes here were committed *before* October 1, 2023; and (3) neither party has addressed the Eighth Amendment constitutionality of the 2023 amendment authorizing the death penalty for capital sexual battery that does not result in the

victim's death. The Attorney General's and Public Defender's briefs in the instant matter do not indicate how they would address the 2023 amendment's Eighth Amendment constitutionality.

Absent fundamental error ("the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error"), and the harmless[1] nature of any Florida law error in not seating a twelve-person jury, we affirm the trial court on Point II.

*Affirmed.*

KLINGENSMITH, C.J., concurs.

ARTAU, J., concurs specially with opinion.

ARTAU, J., concurring specially.

I concur in result with the majority because I conclude that the error here was harmless. But I write separately to explain that the empanelment of the six-person jury was erroneous because rape or sexual battery of a child less than twelve years of age is a capital felony, punishable by either life imprisonment or death, as provided by section 794.011(2)(a), Florida Statutes, requiring the empanelment of a twelve-person jury. Moreover, in my view, section 794.011(2)(a) has been procedurally amended to correct any constitutional deficiency such that the decision in *Buford v. State of Florida*, 403 So. 2d 943 (Fla. 1981), has been superseded by statute and does not run afoul of *Kennedy v. Louisiana*, 554 U.S. 407 (2008). *See State v. Smith*, 547 So. 2d 613, 616 (Fla. 1989) (explaining that when determining whether a case has been superseded by statute, courts must examine "the nature and effect of the court decisions and the statutory amendment"); *see also* § 921.1425(1)(a), Fla. Stat. (2023) ("The Legislature further finds that *Buford v. State of Florida*, 403 So. 2d 943 (Fla. 1981), was wrongly decided, and that *Kennedy v. Louisiana*, 554 U.S. 407 (2008), was wrongly decided and an egregious infringement of the states' power to punish the most heinous of crimes.").

---

[1] For criminal law cases, "[t]he harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

## A. Preservation

Our supreme court has not held that the empanelment of a six-person jury when a twelve-person jury is required under Florida law cannot be treated as fundamental error on appeal. And it is unclear whether our sister courts that have concluded such error to not be fundamental are correct in this conclusion.

Additionally, contrary to the majority's assertion, the State did not contest preservation as to the defendant's *state law* twelve-person jury argument. Even though the majority is correct that the State's answer brief argued the defendant "did not object to the six-member jury below, and this Court has previously found the issue was not preserved when it was not raised in the lower court[,]" this quotation is found under the State's heading that "Appellant's conviction by a six-person jury did not violate his rights under *the Sixth and Fourteenth Amendments*." (Emphasis added). Thus, this preservation challenge was *only to the defendant's federal law* twelve-person jury argument, not the *state law* argument. *Cf. State v. Demons*, 351 So. 3d 10, 16 (Fla. 4th DCA 2022) ("The 'title-and-headings' canon means that 'the title of a statute or section can aid in resolving an ambiguity in the legislation's text.'" (quoting *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991))).

Indeed, for reasons known only to the State, the State addressed only the defendant's *federal law* twelve-person jury argument and never raised any argument, including lack of preservation, as to the defendant's *state law* twelve-person jury argument. As such, an open question exists as to whether the State's failure to challenge lack of preservation waived the preservation requirements.

### 1. Fundamental Error

Fundamental error is exempt from the preservation requirements. *Polls v. State*, 134 So. 3d 1068, 1070 (Fla. 4th DCA 2013). An error is fundamental if it "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Id.* (quoting *State v. Delva*, 575 So. 2d 643, 644-45 (Fla. 1991)). In other words, "an error is deemed fundamental 'when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.'" *Id.* (quoting *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998)).

An example of the denial of due process is the denial of the right to trial by jury. *See Baker v. State*, 386 So. 3d 141, 142 (Fla. 4th DCA 2024)

5

("Because the right of an accused to trial by jury is fundamental, an infringement of that right constitutes fundamental error." (internal citation omitted) (quoting *Dumas v. State*, 439 So. 2d 246, 252 n.8 (Fla. 3d DCA 1983))); *see also Monforto v. State*, 28 So. 3d 65, 69 (Fla. 2d DCA 2009) ("Because the right of an accused to a trial by jury is one of the most fundamental rights guaranteed by our system of government, and is the cornerstone of a fair and impartial trial, an infringement of that right constitutes a fundamental error." (quoting *Rodriguez v. State*, 462 So. 2d 1175, 1177 (Fla. 3d DCA 1985))); *cf. Duncan v. Louisiana*, 391 U.S. 145, 149 (1968) ("Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases [that]—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee.").

Applying this framework, the First, Third, and Fifth District Courts of Appeal have all concluded that the failure to empanel twelve jurors when required to do so under Florida law does not constitute fundamental error because "the right to a jury of twelve persons is not of constitutional dimension" but rather is a statutory right. *Jimenez*, 167 So. 3d 497, 499 (Fla. 3d DCA 2015) (emphasis removed); *see also Howell v. State*, 687 So. 2d 1339, 1340 (Fla. 1st DCA 1997); *Smith v. State,* 857 So. 2d 268, 270 (Fla. 5th DCA 2003).

However, an argument can be made that the right to a twelve-person jury under Florida law arises under our state Constitution because included within the constitutional right of trial by jury is the right to the requisite number of jurors, given the Florida Constitution's provision that "[t]he right of trial by jury shall be secure to all and *remain inviolate.* The qualifications and *the number of jurors*, not fewer than six, *shall be fixed by law.*" Art. I., § 22, Fla. Const. (emphasis added).

Thus, I would certify the following question to our supreme court as one of great public importance:

> Whether the failure to empanel a twelve-person jury when required to do so by Florida law constitutes fundamental error.

### 2. The Intersection Between Preservation and Waiver

Common law appellate traditions still govern appellate practice today. *See* § 2.01, Fla. Stat. ("The common and statute laws of England which are of a general and not a local nature, . . . down to the 4th day of July, 1776,

are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state."); *see also* Joan E. Steinman, *Appellate Courts as First Responders: The Constitutionality and Propriety of Appellate Courts' Resolving Issues in the First Instance*, 87 Notre Dame L. Rev. 1521, 1546-48 (2012) (explaining that modern appellate practice is derived from the English common law).

For example, historical common law courts differed from their civil law counterparts because common law courts would issue rulings based on the arguments parties raised, while civil law courts would take an active role in investigating and prosecuting cases. *See* 3 William Blackstone, *Commentaries* *24-25 (describing the role of common law courts); *Roles in Civil Legal Systems*, U.S. Department of Justice (2025) (URL omitted) (describing the role of civil law courts). This meant that, unlike civil law courts, common law courts, including the appellate courts, effectuated the "impartial administration of justice between subject and subject[.]" 3 William Blackstone, *Commentaries* *24.

From this historical origin, American courts, including Florida courts, have derived their "role of [being] neutral arbiter[s] of matters the parties present." *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *Pinellas Cnty. v. Joiner*, 389 So. 3d 1267, 1273 n.10 (Fla. 2024) (discussing Florida's "party-presentation principles" in the context of appellate review).

Indeed, "it is not the role of the appellate court to act as standby counsel for the parties." *D.H. v. Adept Cmty. Servs., Inc.*, 271 So. 3d 870, 888 (Fla. 2018) (Canady, C.J., dissenting) (citing *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983)), *cited with approval in Joiner*, 389 So. 3d at 1273 n.10; *see also Berben v. State*, 268 So. 3d 235, 239 (Fla. 5th DCA 2019) (Grosshans, J., dissenting) ("[I]t is not the function of [an appellate court] to rebrief an appeal[.]" (first alteration in original) (quoting *Polyglycoat*, 442 So. 2d at 960)), *cited with approval in Joiner*, 389 So. 3d at 1273 n.10; *cf. Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment) ("Our adversary system is designed around the premise that the parties know what is best for them[] and are responsible for advancing the facts and arguments entitling them to relief.").

Moreover, modern preservation rules are also derived from the common law, specifically the common law writ of error. [2] Steinman, *supra*, at 1546-48. At common law, "[a] writ of error [lay] for some supposed mistake in the proceedings of a court of record" and would "only lie[] upon matter[s] of law arising upon the face of the proceedings[.]" 3 William Blackstone, *Commentaries* *405.

Because the error of law had to be apparent on the face of the record, the appellant's argument necessarily had to be preserved for appellate review, or, otherwise, the petition would be dismissed. *See, e.g., Baldwin v. Maryland*, 179 U.S. 220, 220 (1900) (statement by Brewer, J.) ("An attempt was made to review that judgment in this court, but the writ of error was dismissed on the ground that no Federal question *had been distinctly preserved*[.]" (emphasis added) (internal citation omitted)); *F.G. Oxley Stave Co. v. Cnty. of Butler*, 166 U.S. 648, 653, 660 (1897) (dismissing a writ of error for failure to preserve a federal question for appeal).

While these common law principles relating to the neutral roles of courts and preservation are ordinarily consistent with one another, these principles can conflict when an appellant's argument is not preserved but the appellee fails to raise lack of preservation in its answer brief. This then begs the question: What happens in this scenario? Does the defendant's failure to preserve the issue require affirmance? Or does the State's failure to raise lack of preservation in the answer brief constitute a waiver of the preservation requirements, leaving the appeal to be decided on the merits because the court cannot raise lack of preservation on the State's behalf?

We previously decided a similar issue in *Polyglycoat Corp. v. Hirsch Distribs., Inc.,* 442 So. 2d 958 (Fla. 4th DCA 1983). In *Polyglycoat*, we reversed in part a judgment in the appellee's favor and remanded for a new

---

[2] Historically, an "appeal" was different than a writ of error. Steinman, *supra*, at 1546. "An appeal [was] a process of civil law origin, and remove[d] a cause entirely; subjecting the fact, as well as the law, to a review and retrial." *Id.* (alterations in original) (quoting Ira Mickenberg, *Abusing the Exceptions and Regulations Clause: Legislative Attempts to Divest the Supreme Court of Appellate Jurisdiction,* 32 Am. U. L. Rev. 497, 517 (1983)). But "[a] writ of error[] . . . was 'a process of common-law origin, and it remove[d] nothing for re-examination, but the law.'" *Id.* (fourth alteration in original) (quoting Mickenberg, *supra*, at 517). The word "appeal" today has a different meaning than it did historically because "many of [the] American colonies . . . replace[d] or combine[d] the appeal with the more traditional procedures of the common law: the writ of error and the writ of certiorari." *Id.* at 1547 (quoting Mary Sarah Bilder, *The Origin of the Appeal in America,* 48 Hastings L.J. 913, 915 (1997)).

trial as to damages. *Id.* at 959-60. The appellee then moved for rehearing, arguing that the judgment should have been affirmed in its entirety because the argument the appellant relied on was not preserved. *Id.* at 960.

On the motion for rehearing, we agreed with the appellee that the appellant's argument was not preserved, but concluded that because the appellee's answer brief had failed to raise lack of preservation, the appellee waived the lack of preservation argument. *Id.* We explained that we would "not depart from [our] dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally [chose] not to mention" because "[i]t is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, and the legal arguments supporting the positions of the respective parties." *Id.*

We then further explained that "[w]hen points, positions, facts[,] and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy." *Id.* Accordingly, I would certify the following question to our supreme court as one of great public importance:

> Whether an appellee's answer brief must raise the appellant's lack of preservation as to the specific issue raised on appeal for an affirmance to be based on lack of preservation.

### B. Entitlement to a Twelve-Person Jury

On the merits, the defendant was entitled to a twelve-person jury under Article I, section 22, of the Florida Constitution and section 913.10, Florida Statutes, because: (1) section 794.011(2)(a), Florida Statutes, is constitutional in its entirety[3]; and (2) even if the death penalty is not sought under section 794.011(2)(a), section 794.011(2)(a) defines sexual battery on a child as a capital felony, thereby requiring the empanelment of a twelve-person jury under Florida law in any event.

---

[3] The majority states that this issue should not be reached because "neither party has addressed the Eighth Amendment constitutionality of the 2023 amendment authorizing the death penalty for capital sexual battery that does not result in the victim's death."

9

1.  Section 794.011(2)(a)'s Constitutionality

"Constitutional analysis must begin with 'the language of the instrument,' which offers a 'fixed standard' for ascertaining what our founding document means[.]"  *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) (internal citations omitted) (first quoting *Gibbons v. Ogden*, 9 Wheat. 1, 186-89, 6 L.Ed. 23 (1824); and then quoting 1 J. Story, Commentaries on the Constitution of the United States § 399, p. 383 (1833)).  This "fixed standard" is "the light of the law as it existed at the time it was adopted[.]"  *Mattox v. United States*, 156 U.S. 237, 243 (1895).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment[.]"  The Florida Constitution has a similar provision that "shall be construed in conformity with decisions of the United States Supreme Court [that] interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution."  Art. I, § 17, Fla. Const.

Because the Eighth Amendment is derived from an identical provision in the English Bill of Rights, English law existing at the time of the Eighth Amendment's ratification governs what is considered cruel and unusual

---

But by arguing that because "the Legislature has amended the sexual battery statute to authorize the death penalty for capital sexual battery (for those offenses committed after October 1, 2023)[,]" the "amendment calls into question whether the Legislature ever 'intended' that capital sexual battery not be treated as a 'capital' offense[,]" the defendant has raised the issue of the amendment's constitutionality.  If the imposition of the death penalty is constitutional, the defendant would be entitled to a twelve-person jury, even under the holding of *State v. Hogan*, 451 So. 2d 844, 845 (Fla. 1984), wherein our supreme court held "that a capital case is one where death is a possible penalty."  And if the Legislature has always intended for rape or sexual battery on a child to be a capital felony, the defendant would have been entitled to a twelve-person jury even though his crimes occurred before October 1, 2023.  *See* discussion *infra* Section B.2.

The State could have responded to this argument in its answer brief.  It chose not to do so.

Thus, as part of our duty to be a "neutral arbiter" determining whether the defendant has met his burden to prove error, we can—and should—reach the merits of whether the imposition of the death penalty is constitutional.  *See Greenlaw*, 554 U.S. at 243 (explaining that American courts are to be "neutral arbiters of matters the parties present"); *Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979) ("In appellate proceedings[,] . . . the burden is on the appellant to demonstrate error.").

10

punishment. *See State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (principal opinion) (explaining that because the Eighth Amendment is derived from the identical prohibition found in the English Bill of Rights of 1688, which prohibited "the infliction of unnecessary pain in the execution of the death sentence[,]" the Eighth Amendment, as incorporated by the Fourteenth, prevents "execution by a state in a cruel manner"); *see also In re Kemmler*, 136 U.S. 436, 445-47 (1890) (explaining that due to the Eighth Amendment's historical origins in English law, "the punishment of death is not cruel within the meaning of that word as used in the constitution[,]" but the word "cruel" rather refers to "inhuman and barbarous" punishment, i.e. "something more than the extinguishment of life[,]" such as "burning at the stake, crucifixion, breaking on the wheel, or the like").

Under English law, the crime of rape, defined as "the carnal knowledge of a woman forcibly and against her will[,]" was considered to be a capital offense punishable by hanging. 4 William Blackstone, *Commentaries* \*210, \*216. In fact, rape was such a heinous crime that the English "command[ed] the law to arise with an avenging sword, that the infamous men who are, or shall in the future be guilty of it, may undergo the most severe punishments."[4] William Blackstone, *Volume 4 Commentaries on the Laws of England* 126 (J.W. Jones trans., Lonang Institute ed. 2005) (quoting an edict of Constantius and Constans).

Additionally, English law considered the "abominable wickedness of *carnally* knowing *or abusing* any woman child under the age of ten years" to be equivalent to the crime of rape, and debate occurred as to whether the age should be raised to twelve, which was "the age of female discretion by the common law[.]" 4 William Blackstone, *Commentaries* \*212 (emphasis added). Because "carnal abuse" satisfied the definition of this crime, this was the crime of sexual battery on a child. *Cf. GKE v. Gunning* [Feb. 17, 2023] EWHC 332 (KB), 2 WLUK 309, P.I.Q.R. P11 [P356] No. QB-2021-001142, 2023 WL 02072449 (explaining that a defendant commits the tort of sexual abuse when he commits either sexual assault or *sexual battery* against the plaintiff).

Thus, because English law punished the crime of rape with death and

---

[4] Indeed, the English history of severe punishment for the crime of rape is extensive. Under King Athelstan, the Saxons punished a person found guilty of rape by death. 4 William Blackstone, *Commentaries* \*211. This was consistent with the punishment imposed by the Gothics and Scandinavians for the commission of the offense. *Id.* And under William the Conqueror, rape was punished by "castration and loss of eyes[.]" *Id.*

11

considered the crime of sexual battery on a child to be equivalent to rape, the punishment of death for the crime of sexual battery on a child would have been deemed legal. And because section 794.011(2)(a) authorizes the death penalty as punishment for the crime of sexual battery on a child, it also would have been deemed legal under English law.

Despite this rich history and tradition under English law of harsh punishment—including imposing the death penalty—for the crime of sexual battery on a child, our supreme court has previously held that a prior version of section 794.011(2)(a)'s authorization of the death penalty was not constitutional, based on the reasoning of the various justices who decided *Coker v. Georgia*, 433 U.S. 584 (1977).[5] *See Buford*, 403 So. 2d at 951.

Later, the federal Supreme Court held that Louisiana's statute, authorizing the death penalty for the crime of raping a child under twelve years of age, violated the Eighth Amendment. *See Kennedy*, 554 U.S. at 413. There, the Court stated that the Eighth Amendment should be interpreted with "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 419 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). *But see Harmelin v. Michigan*, 501 U.S. 957, 990 (1991) (principal opinion) ("The Eighth Amendment is not a ratchet, whereby a temporary consensus on leniency for a particular crime fixes a permanent constitutional maximum, disabling the States from giving effect to altered beliefs and responding to changed social conditions."); *see also Gregg v. Georgia*, 428 U.S. 153, 176 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) ("Caution is necessary lest this Court become, 'under the aegis of the Cruel and Unusual Punishment Clause, the ultimate arbiter of the standards of criminal responsibility . . . throughout the country.'" (alteration in original) (quoting *Powell v. Texas*, 392 U.S. 514, 533 (plurality opinion))).

But "our Constitution is not a fungible document that can be selectively enforced based on public policy preferences." *Lopez v. State*, 397 So. 3d 1035, 1040 (Fla. 4th DCA 2024) (Artau, J., concurring specially). Indeed, "judges are not at liberty to substitute their personal policy preferences for that of the Framers[,]" and the Constitution may only be amended "pursuant to the process established by its Framers[.]" *Id.*; *see also* § 921.1425(1)(a), Fla. Stat. (2023) ("The Legislature further finds that . . . *Kennedy v. Louisiana*, 554 U.S. 407 (2008), was wrongly decided

---

[5] In *Coker*, the federal Supreme Court held that the imposition of the death penalty for the crime of rape of an adult woman was unconstitutional. 433 U.S. at 592 (principal opinion).

and an egregious infringement of the states' power to punish the most heinous of crimes.").

Regardless, in 2023, our Legislature amended section 794.011—and created section 921.1425—in such a way that no comparable statutes have been considered by either our supreme court or the federal Supreme Court, thereby entitling these statutes to presumptive constitutionality. *See Gregg*, 428 U.S. at 175 (opinion of Stewart, Powell, and Stevens, JJ.) ("[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.").

Section 794.011(2)(a)'s 2023 version states, in relevant part:

> A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and *921.1425*. In all capital cases under this section, the procedure set forth in *s. 921.1425* shall be followed in order to determine a sentence of death or life imprisonment.

(Emphasis added).

Previous versions of section 794.011(2)(a), including the version considered by *Buford*, made the crime "punishable as provided in ss. 775.082 and *921.141*." (Emphasis added).

Section 921.1425 provides the procedure to follow in sentencing for *the specific crime of sexual battery*. For a defendant to be eligible for a sentence of death under section 921.1425, a jury must unanimously find the presence of *at least two aggravating factors*. § 921.1425(3), Fla. Stat. (2023). And section 921.1425 provides an exclusive list of *eleven aggravating factors specifically chosen for the crime of sexual battery*. § 921.1425(7), Fla. Stat. (2023).

In contrast, section 921.141's 1977 version, which was at issue in *Buford*, provided the procedure to follow for sentencing *any capital felony*. That version of section 921.141 allowed the sentence of death to be imposed for any capital felony in which the aggravating circumstances outweighed the mitigating circumstances. § 921.141(2)-(3), Fla. Stat.

13

(1977).  And that version of the statute also provided an exclusive list of *fourteen aggravating factors generic to any capital felony*.  § 921.141(5), Fla. Stat (1977).

Thus, because imposition of the death penalty for a violation of section 794.011(2)(a) is now governed by section 921.1425, which requires more stringent requirements to be met for the sentence of death to be imposed for rape or sexual battery of a child than if the crime were a generic capital felony, section 794.011(2)(a) has been amended in such a way that the decision in *Buford* has been superseded by statute.  *See Smith*, 547 So. 2d at 616 (explaining that when determining whether a case has been superseded by statute, courts must examine "the nature and effect of the court decisions and the statutory amendment"); *see also* § 921.1425(1)(a), Fla. Stat. (2023) ("The Legislature further finds that *Buford v. State of Florida*, 403 So. 2d 943 (Fla. 1981), was wrongly decided[.]").

Moreover, the Louisiana statute at issue in *Kennedy* did not contain a list of aggravating factors specific to the crime of sexual battery and considered sexual battery on a child less than twelve to be aggravated rape, rendering a defendant automatically eligible for the death penalty absent any additional aggravating factors.  554 U.S. at 416-17, 423.  The Court in *Kennedy* explained that this fact was fatal to the Louisiana statute's constitutionality because "it [was] difficult to identify standards that would guide the decisionmaker so the penalty is reserved for the most severe cases of child rape and yet not imposed in an arbitrary way" and that "[i]t [was] not a solution simply to apply *to this context the aggravating factors developed for capital murder*."  *Id.* at 439-40 (emphasis added).

And *Kennedy* also left open the possibility that the imposition of the death penalty for a crime against an individual that does not take the victim's life could be found constitutional if the penalty could be imposed in a way that was not "arbitrary and capricious."  *See id.* at 447 ("Difficulties in administering the [death] penalty to ensure against its *arbitrary and capricious application* require adherence to a rule reserving its use, at this time . . . and in cases of crimes against individuals, for crimes that take the life of the victim." (emphasis added)).

Thus, *Kennedy* struck down Louisiana's statute because the statute allowed for blanket use of the death penalty in cases of rape or sexual battery on a child instead of restraining the use of the death penalty to only the most egregious facts involving the commission of that offense.

But section 794.011(2)(a) takes a different approach to imposing the death penalty than did the Louisiana statute in *Kennedy*.  As stated

previously, a jury must unanimously find at least two aggravating factors from an exclusive list of eleven specifically developed for the crime of rape or sexual battery on a child before a defendant is even eligible for the death penalty. *See* § 921.1425(3), (7), Fla. Stat. (2023). This requirement is more stringent than when a defendant is charged with any other capital felony. *Compare* § 921.1425(3), (7), Fla. Stat. (2023), *with* § 921.141(2)(a)-(b), Fla. Stat. (2023) (requiring the presence of at least one aggravating factor before a defendant is eligible for the death penalty when charged with any other capital felony). As a result, section 921.1425 prevents arbitrary and capricious application of the death penalty for violations of section 794.011(2)(a) by imposing the kind of guided discretion in sentencing missing from the Louisiana statute considered in *Kennedy*.[6]

Accordingly, neither *Buford* nor *Kennedy* prevents section 794.011(2)(a) from being determined constitutional, and section 794.011(2)(a) is indeed constitutional because its authorization of the death penalty would have been permissible at common law and is consistent with the original understanding of the Eighth Amendment.

Therefore, section 794.011(2)(a) does not violate the Eighth Amendment, and the State may seek the death penalty for violations of it. Because this is such an important issue, I would certify the following question to our supreme court as one of great public importance:

> Whether section 794.011(2)(a)'s 2023 amendment, allowing for the imposition of the death penalty for the nonhomicide offense of sexual battery on a child, is constitutional under the Eighth Amendment to the Constitution of the United States and the Florida Constitution.

### 2. Sexual Battery is a Capital Felony

Statutes are to be interpreted in accordance with their plain and ordinary meaning, based on the "statutory context" and "the aid of

---

[6] Another concern *Kennedy* raised was that a child could be an unreliable witness and imagine testimony, thereby undermining a legitimate goal of punishment by leading to the possibility of wrongful execution. 554 U.S. at 443. But at common law, a conviction, let alone a death sentence, could "not be grounded singly on the unsupported accusation of an infant under [the] years of discretion." 4 William Blackstone, *Commentaries* *214. Similar to the common law tradition, our Legislature has alleviated *Kennedy*'s concern by requiring a jury to find two aggravating factors, in addition to the presence of all the elements of the crime, before a defendant will even be eligible for the death penalty. § 921.1425(3), Fla. Stat.

whatever canons [of interpretation] might shed light on the interpretive issues in dispute." *Conage v. United States*, 346 So. 3d 594, 594 (Fla. 2022).

The Florida Constitution establishes that "the number of jurors, not fewer than six, shall be fixed by law." Art. I, § 22, Fla. Const. Pursuant to this, the Legislature has established that "[t]welve persons shall constitute a jury to try *all capital cases,* and six persons shall constitute a jury to try all other criminal cases." § 913.10, Fla. Stat. (emphasis added).

The Legislature has also established that "[a] person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits *a capital felony*[.]" § 794.011(2)(a), Fla. Stat. (emphasis added).

Under the plain and ordinary meaning of these statutes, sexual battery by an adult on a minor less than twelve is a capital offense—*regardless of whether the State seeks the death penalty*—for which the defendant is entitled to a twelve-person jury under both the Florida Constitution and section 913.10. *Cf. Johnson v. State*, 289 So. 3d 986, 988 (Fla. 1st DCA 2020) ("[A] precipitating action (or inaction) by the prosecution does not reclassify the offense from capital to noncapital and cannot deprive the appellant of his right to a twelve-person jury in his first-degree felony murder trial.").

However, when our supreme court previously considered the issue of whether a defendant charged with rape or sexual battery on a child is entitled to a twelve-person jury, the court held that the defendant was not so entitled. *See State v. Hogan*, 451 So. 2d 844, 845-46 (Fla. 1984).

In *Hogan*, our supreme court acknowledged that rape or sexual battery by an adult on a child was "still defined as a 'capital' crime by the legislature[.]" *Id.* at 845. But the court ignored this legislative definition and instead redefined "a capital case [as] one where death is a possible penalty." *Id.* The court then used its definition of a capital case instead of the Legislature's definition to construe the statute "in accordance with what [it] believe[d] the legislature intended when it passed the statute[.]" *Id.* at 846.

However, merely finding a penalty unconstitutional does not in and of itself render the categorization of the offense as capital, for the purpose of determining how many jurors shall be empaneled, unconstitutional. *See Rusaw v. State*, 451 So. 2d 469, 470 (Fla. 1984) ("[E]limination of the death penalty from the statute does not of course destroy the entire statute. We

16

have steadfastly ruled that the remaining consistent portions of statutes shall be held constitutional if there is any reasonable basis for doing so." (quoting *Donaldson v. Sack*, 265 So. 2d 499, 502 (Fla. 1972))).

But regardless of *Hogan*'s holding, it has been superseded by the 2023 amendment to section 794.011(2)(a). *See Smith*, 547 So. 2d at 616 (explaining that when determining whether a case has been superseded by statute, courts must examine "the nature and effect of the court decisions and the statutory amendment").

*Hogan* addressed section 794.011(2)(a)'s 1981 version, which stated:

> A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and 921.141.

This provision remained unchanged through the various amendments to section 794.011 until 2023. In 2023, the Legislature amended section 794.011(2)(a) to state:

> A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and *921.1425. In all capital cases under this section, the procedure set forth in s. 921.1425 shall be followed in order to determine a sentence of death or life imprisonment. If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.*

(Emphasis added).

By adding procedural requirements for the State to seek the death penalty, the Legislature has reinforced its intent that rape or sexual battery committed by an adult on a child less than twelve be a capital felony. *See* § 921.1425(b), Fla. Stat. (2023) ("It is the intent of the Legislature that the procedure set forth in this section shall be followed,

and a prosecutor must file notice, as provided in s. 794.011(2)(a), *if he or she intends to seek the death penalty*." (emphasis added)); *see also Paese v. State*, 381 So. 3d 4, 17 (Fla. 4th DCA 2024) ("In interpreting a statute, we must presume that a legislative body 'acts intentionally and purposefully[.]'" (quoting *Beach v. Great W. Bank*, 692 So. 2d 146, 152 (Fla. 1997))).

The majority claims that "the 2023 amendment does not apply to this case because the crimes here were committed *before* October 1, 2023[.]" But this misconstrues the nature of law and the role of the judiciary in a common law system such as ours.

As Blackstone explained, law is "immutable." 1 William Blackstone, *Commentaries* \*39. Thus, common law courts were "not delegated [the authority] to pronounce a new law, but *to maintain and expound the old one.*" *Id.* at \*69 (emphasis added). When common law courts would deviate from precedent, due to such precedent being either "contrary to reason" or "to the divine law," common law courts did "not pretend to make a new law, but . . . *vindicate*[*d*] *the old one from misrepresentation.*" *Id.* at \*69-70 (emphasis added). In other words, "if it [was] found that the former decision [was] manifestly observed or injust, it [was] declared, not that such a sentence was bad law, but that *it was not law*[,] . . . *as* [*had*] *been erroneously determined.*" *Id.* (emphasis added).

Thus, while "[i]t is emphatically the province and duty of the judicial department to say what the law is[,]" courts may only "expound and interpret" laws without changing them. *Marbury v. Madison*, 5 U.S. 137, 177 (1803); *see also Dobbs*, 597 U.S. at 291 ("[A court's] sole authority is to exercise 'judgment'—which is to say, the authority to judge what the law means and how it should apply to the case at hand." (quoting The Federalist No. 78, p. 523 (J. Cooke ed. 1961))).

Because the 1981 version and the 2023 amendment to section 794.011(2)(a) both describe rape or sexual battery on a child as a "capital felony," the 2023 amendment did not change the categorization of this crime. Indeed, the 2023 amendment is applicable because section 794.011(2)(a) has always made rape or sexual battery on a child a "capital felony" punishable by either life imprisonment or death. Thus, the 2023 amendment constitutes a procedural change to how the death penalty can be pursued, which does not run afoul of the Ex Post Facto Clause. *See Miller v. Florida*, 482 U.S. 423, 433 (1987) ("[N]o *ex post facto* violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.'" (quoting *Hopt v. Utah*, 110 U.S. 574,

18

590 (1884))).

Therefore, *Hogan*'s interpretation has also been superseded by statute. Accordingly, rape or sexual battery on a child is a capital offense, and a defendant charged with this crime is entitled to a twelve-person jury—even if (1) the State does not seek the death penalty and (2) the crime was committed before October 1, 2023. To firmly resolve *Hogan*'s continued applicability, I would certify the following question to our supreme court as one of great public importance:

> Whether, in light of the 2023 amendment to section 794.011(2)(a), Florida Statutes, rape or sexual battery by an adult on a minor less than twelve years of age constitutes a "capital" offense entitling a defendant to a twelve-person jury under Article I, section 22, of the Florida Constitution and section 913.10, Florida Statutes, regardless of whether the death penalty is pursued as a punishment.

## C. Harmless Error

Before harmless error analysis can be applied, it must first be determined whether the error is subject to harmless error analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). Based on our supreme court's opinion in *Johnson v. State*, 994 So. 2d 960 (Fla. 2008), Florida appellate courts seemingly must apply harmless error analysis to the erroneous empanelment of a six-person jury. *But see United States v. Curbelo*, 343 F.3d 273, 282 (4th Cir. 2003) ("[H]armless error review does not apply where 'the wrong entity judged the defendant guilty.'" (quoting *Rose v. Clark*, 478 U.S. 570, 578 (1986))).

In *Johnson*, the defendant was charged with driving under the influence ("DUI") on a specific occasion while also having at least three other prior DUI convictions. 994 So. 2d at 962. The defendant's trial was bifurcated, and a jury found that the defendant drove under the influence on the specific occasion charged. *Id.* The defendant's attorney then stipulated to a second-phase bench trial, and the trial judge concluded that the defendant had at least three prior DUI convictions. *Id.* On appeal, the defendant argued that he had not waived his right to a jury trial because he did not participate in a proper colloquy and this right was violated when the trial court conducted the bench trial. *Id.* at 964.

Our supreme court held that the error was harmless because "[a]nswering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of

the jury trial guarantee." *Johnson*, 994 So. 2d at 963-66 (quoting *State v. Harbaugh*, 754 So. 2d 691, 694 (Fla. 2000)). Accordingly, if the complete denial of the right to trial by jury is subject to harmless error analysis, empaneling six jurors instead of the required twelve would appear to be as well. *But see Neder v. United States*, 527 U.S. 1, 30 (1999) (Scalia, J., concurring in part and dissenting in part) ("[D]epriving a criminal defendant of the right to have the jury determine his guilt of the crime charged[] . . . can never be harmless."); *see also Miller v. Dormire*, 310 F.3d 600, 604 (8th Cir. 2002) ("When a defendant is deprived of his right to trial by jury, the error is structural and requires automatic reversal of the defendant's conviction.").

Nevertheless, as an inferior court, we are required to follow *Johnson* as binding authority, which would seemingly apply harmless error analysis to the empanelment of a six-person jury when a twelve-person jury is required under Florida law. However, to definitively resolve this issue, I would certify the following question to our supreme court as one of great public importance:

> Whether the empanelment of a six-person jury in violation of Article I, section 22, of the Florida Constitution and section 913.10, Florida Statutes, is subject to harmless error analysis.

Applying harmless error analysis here, the erroneous empanelment of the six-person jury was harmless beyond a reasonable doubt.

An error is harmless, and thus cannot be reversed, if "there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986); *see also* § 59.041, Fla. Stat. ("No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, . . . unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice."). The burden to prove this "beyond a reasonable doubt" is "on the state, as the beneficiary of the error." *DiGuilio*, 491 So. 2d at 1135.

It is true that, generally, smaller juries are likely to come to different results than larger juries. *See Curbelo*, 343 F.3d at 287 ("[W]e cannot say with any assurance, let alone 'fair assurance[,]' that the absence of a twelfth juror did 'not substantially sway[]' the judgment." (third alteration in original) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946))); *see also Cunningham v. Florida*, 144 S. Ct. 1287, 1288 (2024) (Gorsuch, J., dissenting from denial for certiorari) (explaining that the studies the

Supreme Court relied on in *Williams v. Florida*, 399 U.S. 78 (1970), showing no difference between the results reached by smaller juries and larger juries, have been discredited and the data actually shows the opposite).

But this is not the case here because the evidence of the defendant's guilt is so overwhelming that no reasonable jury—whether comprised of six or twelve jurors—would have acquitted him. Indeed, the evidence used to convict even included a recorded phone conversation in which the defendant tried to explain to the victim why he committed the egregious acts against her.

Therefore, the error was harmless beyond a reasonable doubt.

**Conclusion**

Criminal defendants charged with rape or sexual battery of a child under section 794.011(2)(a) are entitled to a trial by a twelve-person jury under article I, section 22, of the Florida Constitution and section 913.10, Florida Statutes, because rape or sexual battery on a child less than twelve is a death penalty eligible capital felony regardless of whether the State seeks the death penalty, which it constitutionally may do. In other words, our Legislature has mandated that a twelve-person jury is to be empaneled for all cases in which rape or sexual battery on a child less than twelve is charged because such a charge is death penalty eligible without regard to whether the State chooses to seek the death penalty. We are required to follow the Legislature's clear direction because it is not inconsistent with the original understanding of the Eighth Amendment. Therefore, when a criminal defendant has been charged with this crime, a trial court errs when it empanels only a six-person jury. However, because I agree the error here was harmless beyond a reasonable doubt, I concur in the result reached by the majority.

\*  \*  \*

*Not final until disposition of timely filed motion for rehearing.*

21